UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTONIO MAYS,
          Petitioner,

v.                                                                        Case No. 06C0486

JUDY SMITH,
          Respondent.

## DECISION AND ORDER

Pro se petitioner Antonio Mays, a Wisconsin state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court conviction of armed robbery with the use of force as a party to the crime and as a habitual criminal. In petitioner's first trial, the trial court declared a mistrial, and the second trial resulted in a conviction. Petitioner argues that his second trial violated his constitutional protection against double jeopardy and, alternatively, that his trial counsel was ineffective by failing to consult with him before requesting a mistrial.

### I. BACKGROUND

The state court of appeals set forth the background of the case as follows:

¶ 2    Mays was charged in connection with a robbery that took place on December 24, 2001, at a private home. Two men entered the residence, shot and killed a dog, ordered several occupants to lie on the floor, and took cash and presents from the home. Mays and a co-defendant, Lamarcus Jones, were alleged to be the perpetrators.

¶ 3    Mays and Jones were tried together in August 2002. During three days of trial, there were numerous incidents where Mays acted out and was admonished by the trial court. On the third day, the trial court and the parties discussed in chambers the trial court's concerns about Mays's behavior, which included clapping while the trial court was speaking, threatening deputies with violence, and intentionally displaying wrist restraints to the jury.

The most immediate incident had occurred over the lunch hour, when Mays kicked a wall in the bullpen and screamed so loudly that he could be heard one floor below.[1] After the in-chambers conference, the trial court summarized the discussion on the record.[2]

¶ 4   The trial court said that it had discussed with trial counsel and the State its concerns about proceeding with the trial, given that the trial was taking longer than anticipated, in part because of disruptions by both defendants. The trial court stated that it was concerned about the safety of those in the courtroom. The trial court also indicated that it had concerns about whether both defendants could receive a fair trial, given the misconduct by Mays that the jury had observed during trial and might have heard over the lunch hour. Finally, the trial court expressed concern that Mays's behavior signaled that he might have mental health issues that needed to be addressed (including whether Mays was taking prescribed medication for his mental health). The trial court said it was considering whether to declare a mistrial so that Mays could undergo a mental health evaluation. The trial court said that in the alternative, it could continue the trial with Mays in the jail, observing the proceedings with the use of video conferencing.

¶ 5   The trial court asked the State and trial counsel to state their positions. Trial counsel for co-defendant Jones indicated that he had discussed the issues with his client, but trial counsel did not indicate a preference for either of the proposed courses of action.

¶ 6   Trial counsel for Mays said that in his opinion, Mays's mental condition had deteriorated over the course of the trial, making Mays easily agitated. Trial counsel opined that Mays's behavior had changed because Mays had not consistently taken his medication during the trial. Trial counsel concluded:

> I think his inappropriate behavior, which is due to the lack of meds, should not be considered by the jury. I would ask the Court to go along with our thinking on that and declare a mistrial as far as we are concerned and ask that Mr. Mays at least be evaluated as to his competency to refuse his meds.

¶ 7   After trial counsel finished speaking, Mays and the trial court immediately had the following exchange:

> DEFENDANT MAYS: Is it too hard for you to realize these chains are too tight? This is cruel and unusual punishment. What do you think this is? The chains is on my chest. I can hold my hand down. The fuckin' chains is tight.

2

> THE COURT: Mr. Mays -
>
> DEFENDANT MAYS: Excuse my language. I apologize.
>
> THE COURT: We had that - we had that discussion already. I'm not going to accept your apologies anymore.
>
> DEFENDANT MAYS: These things is on tight from foot to arm.
>
> THE COURT: They're on tight because when they were loose you managed to pull the middle chain off of your waist. Again, remember I told you you control your own behavior and the way you're treated.
>
> DEFENDANT MAYS: Rights now these things squeezin' my ankles. I barely can walk. My left leg - if I'm in pain -
>
> THE COURT: I think you need to be quiet right now, Mr. Mays.
>
> DEFENDANT MAYS: This is justice? Ha. You see this around my legs? That's what I'm talking about.
>
> THE COURT: The Court is going to order an in-patient examination at the Winnebago Mental Health Complex for the defendant, Antonio Mays. The Court is also pursuant to 971.14(3) directing the facility to make a determination as to the defendant's competency to refuse medications.
>
> As a result of the defendant not - defendant Mays not being able to proceed with the trial today, the Court is granting a mistrial. The deputies will now be escorting Mr. Mays out of the court.

¶ 8    After Mays exited the room, none of the parties noted any objection to declaring a mistrial. They proceeded to discuss scheduling issues. The jury was dismissed.

¶ 7    A mental health examination was subsequently conducted. The trial court found Mays competent to proceed and scheduled separate new trials for each defendant.

¶ 10    A new attorney was appointed for Mays. This attorney later became standby counsel for Mays when Mays asked to represent himself. The jury found Mays guilty of armed robbery and not guilty of two other crimes.[3]

3

¶ 11  Mays was again represented by counsel at sentencing. He was sentenced to ten years in prison and ten years of extended supervision. Mays filed a motion for postconviction relief, alleging that his right to be free from being tried twice for the same crime had been violated. The motion also asserted that if the trial court were to conclude that Mays waived his double jeopardy protections when trial counsel requested the mistrial, then trial counsel provided ineffective assistance. The trial court denied Mays's motion without a hearing.

> [1]The trial court noted in a subsequent hearing that before granting the mistrial, it was informed that Mays had damaged the bullpen, thrown his food around the bullpen area and had urinated on the food and throughout the bullpen area.
>
> [2]Mays does not challenge the accuracy of the trial court's summation of what occurred in court, in chambers or in the bullpen.
>
> [3] The Honorable Mary M. Kuhnmuench heard the first trial and declared the mistrial. At Mays's request, Judge Kuhnmuench recused herself and the second trial was held before the Honorable M. Joseph Donald. Due to judicial assignment, the postconviction motion was later heard by the Honorable Richard J. Sankovitz.

(Answer Ex. F. at 2-5.)

The court of appeals affirmed petitioner's conviction and the denial of post-conviction relief. The court found that petitioner waived his double jeopardy protections when his counsel requested a mistrial. Alternatively, the court held that even if petitioner's counsel did not consult with petitioner prior to asking for a mistrial and that petitioner did not consent to a mistrial, petitioner was not entitled to a reversal because the trial court had abundant reasons to grant the mistrial on its own initiative. Petitioner unsuccessfully sought further review in the state supreme court and then filed the present petition.

## II.  STANDARD OF REVIEW

A federal court may grant habeas relief to a state prisoner who is in custody "in violation of the Constitution or laws or treaties of the United States." § 2254(a).  When a petitioner files his petition after the effective date of the Antiterrorism and Effective Death

4

Penalty Act of 1996 ("AEDPA"), the AEDPA standard of review governs his claims. Ouska v.Cahill-Masching, 246 F.3d 1036, 1044 (7th Cir. 2001). AEDPA limits a federal court's authority to grant habeas relief to a person who is being unlawfully held in custody. Under AEDPA, relief can be granted only if the state court decision under review was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," §2254(d)(1); involved an "unreasonable application" of such clearly established law, § 2254(d)(1); or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

### III. DISCUSSION

A mistrial granted at a defendant's request does not generally present a double jeopardy problem. See Oregon v. Kennedy, 456 U.S. 667, 672 (1982); United States v. Dinitz, 424 U.S. 600, 607 (1976). In the present case, the state court of appeals concluded that petitioner waived his double jeopardy claim when, at his first trial, his counsel affirmatively requested that the court grant a mistrial. In reaching this conclusion, the state court of appeals made a presumptively correct factual determination and applied a well known and widely accepted legal principle. See, e.g., Galowsk v. Murphy, 891 F.2d 629, 639 (7th Cir. 1989) (stating that the decision to request a mistrial is a strategic decision to be made by the attorney). Therefore, its decision was not contrary to or an unreasonable application of clearly established Supreme Court precedent. Nor did the court unreasonably determine the facts in light of the evidence appearing in the record.

In addition, a trial court may grant a mistrial on its own initiative for "manifest necessity." Arizona v. Washington, 434 U.S. 497, 504-05 (1978). Manifest necessity is

5

a "high degree" of necessity. Id. at 506. A high degree of necessity exists when "the ends of public justice" would be defeated without a mistrial. Id. A trial court's decision to declare a mistrial based on manifest necessity is entitled to considerable deference. Id. at 511-12. For example, where there is a question as to a defendant's competency and the defendant has behaved violently, a judge's decision to declare a mistrial will be upheld. See Hamm v. Jabe, 706 F.2d 765, 767-68 (6th Cir. 1983). In the present case, the court of appeals held that even if petitioner did not waive his double jeopardy claim when his counsel asked for a mistrial, the trial court properly granted the mistrial on its own initiative based on manifest necessity. The court of appeals based this conclusion on evidence that petitioner was disruptive and violent during the trial, that his conduct raised genuine questions about his competence and that a competency exam was appropriate. The court of appeals concluded that the trial court was justified in terminating the trial so that petitioner could be examined. In reaching this conclusion, the court of appeals again applied a generally accepted legal principle. Its decision was not contrary to or an unreasonable application of Supreme Court precedent. Further, the court did not unreasonably determine the facts.

I turn now to petitioner's claim that his trial counsel was ineffective by failing to consult him before asking for a mistrial. In order to establish ineffective assistance, petitioner must show that his counsel's performance was deficient and that as a result, he was prejudiced. Strickland v. Washington, 466 U.S. 668, 687 (1984). The court of appeals implicitly concluded that petitioner's counsel did not perform deficiently by requesting a mistrial, stating that such request "certainly seems appropriate." (Answer Ex. F at 9 n.5.) In fact, the court said that if counsel had not sought a mistrial, he would have been ineffective. Id. Further, by determining that the trial court could have properly granted the

6

mistrial on its own initiative, the court of appeals in effect concluded that petitioner's trial counsel's request for a mistrial caused petitioner no prejudice. Petitioner presents no basis to suggest that either of these conclusions resulted in a decision that was contrary to or a unreasonable application of Strickland.

## IV. CONCLUSION

Therefore,

**IT IS ORDERED** that petitioner's application for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 2 day of August, 2007.

/s_____
LYNN ADELMAN
District Judge